UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

CATALINA MENJIVAR                                                               PLAINTIFF

v.                                    No. 5:17-CV-05260

TYSON POULTRY, INC., and
TYSON FOODS, INC.                                                              DEFENDANTS

**<u>OPINION AND ORDER</u>**

Before the Court is Defendants' November 12, 2018 motion (Doc. 23) for summary judgment. Defendants have filed a brief (Doc. 24) and statement of facts (Doc. 25) in support. Plaintiff has filed an untimely motion (Doc. 26) for extension of time to file her response to the motion for summary judgment. Although the motion for extension of time has not been granted, she has also filed a response (Doc. 27) to the motion for summary judgment, a brief (Doc. 28) in opposition to summary judgment, and a responsive statement of facts (Doc. 29). Defendants have filed a response (Doc. 30) in opposition to the motion for extension of time.

In her motion to extend, Plaintiff requests additional time because her attorney "mistakenly believed that his client had 21 days to respond" to a motion for summary judgment, rather than the 14 days set out in this Court's local rules. (Doc. 26, p. 1). That is, although the actual response deadline was November 26, 2018, Plaintiff's counsel believed the response deadline to be December 3, 2018. Plaintiff filed her motion for extension of time and responsive documents on December 4, 2018. Defendants argue that Plaintiff's motion for extension should be denied because "Plaintiff has stated only lack of diligence on the part of counsel" which is insufficient to demonstrate good cause or excusable neglect. (Doc. 30, p. 2). The Court agrees that Plaintiff's motion for extension of time does not set out good cause for missing the deadline, let alone excusable neglect. Nevertheless, because of the preference for ruling on the merits, the Court will

1

grant the motion for extension of time and consider the untimely response.[1] Defendants' motion for summary judgment will be granted.

Plaintiff's complaint raises claims for termination of employment and a hostile workplace environment constituting unlawful employment discrimination on the basis of national origin. Title VII of the Civil Rights Act prohibits employment discrimination on the basis of national origin. 42 U.S.C. § 2000e, et seq.

With respect to Plaintiff's claim arising out of termination of her employment, there is no direct evidence of discrimination in the record. In the Title VII context, "direct evidence is evidence 'showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated' the adverse employment action." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1044 (8th Cir. 2011) (quoting *Thomas v. First Nat'l Bank of Wynne*, 111 F.3d 64, 66 (8th Cir. 1997)).

Plaintiff was employed at Defendant Tyson Poultry, Inc.'s Chick-N-Quick plant in Rogers, Arkansas, and was supervised by Fredy Valladares.[2] The challenged decision is the termination of Plaintiff's employment. The discriminatory animus is Valladares's alleged bigotry against

---

[1] Despite the clear requirement of the Rules, Plaintiff's responsive statement of facts (Doc. 29) does not specifically controvert any facts in Defendants' statement of facts, nor does it cite to any portion of the record. Fed. R. Civ. P. 56(e)(2); W.D. Ark. R. 56.1(c). Instead, it provides only a conclusory legal statement that "[t]he statements made by the Defendant for the termination of the Plaintiff's employment are a pretext as demonstrated by the overt statements regarding the Plaintiff's national origins made [by] Defendant's supervisor and previous to the reasons stated by the employer." (Doc. 29). Plaintiff has attached short affidavits and their translations (Docs. 27-1–27-4) to her motion, however, and the Court has considered these documents. Except for any facts put into dispute by the affidavits, the material facts in Defendants' statement of facts are deemed admitted.

[2] Plaintiff was not employed by Defendant Tyson Foods, Inc., and dismissal of claims against it will be had on that basis.

Salvadorians. The decision to terminate Plaintiff's employment was made by Manuel Aguirre[3] in Defendants' human resources department. There is no instance in the record of Aguirre expressing a discriminatory animus against Salvadorians, and no apparent link between Aguirre's decision and Valladares's alleged bigotry. Because Plaintiff lacks direct evidence of discriminatory animus, her case can overcome Defendants' motion for summary judgment only if she can raise an inference of unlawful discrimination under the *McDonnell Douglas* burden-shifting framework. *Torgerson*, 643 F.3d at 1044.

Under the *McDonnell Douglas* framework, if Plaintiff can meet her burden to produce evidence that establishes a prima facie case of discrimination, Defendants may then articulate a legitimate nondiscriminatory reason for their decision, and the burden shifts back to Plaintiff to produce evidence sufficient to create a genuine issue of material fact as to whether Defendants' articulated reason was pretext for intentional discrimination. *Id.* at 1046. The Court need not determine whether Plaintiff can make out a prima facie case of discrimination because Defendants have articulated a legitimate nondiscriminatory reason for the decision to terminate Plaintiff's employment and she has not produced any evidence to show that the decision was mere pretext for unlawful discrimination.

Defendant's policy is to terminate the employment of any employee who receives a combination of one written warning with suspension and three written warnings within any 12-month period. On October 31, 2016, Plaintiff and other team members were disciplined for yelling at one another. Because Plaintiff had previously been counseled to treat coworkers with respect and dignity, Aguirre gave her a written warning. On December 15, 2016, following an

---

[3] Aguirre's decision was approved by director of human resources Travis Fredricksen, who otherwise had no apparent involvement.

investigation into a report he received, Aguirre gave Plaintiff a written warning because he believed she had taken an unauthorized lunch break on December 14, 2016. On May 19, 2017, Aguirre gave Plaintiff a written warning with suspension because he believed she had used obscene language while talking with another employee. On May 25, 2017, after reviewing security camera footage, Aguirre gave Plaintiff a written warning because she was repeatedly taking product she believed to be inferior off the production line, turning her back to the production line as additional product went by, so she could show the inferior product to the camera. Because this was her third written warning within a 12-month period, and because she also received a written warning and suspension in that period, Aguirre proposed termination of Plaintiff's employment.

Although Valladares was involved in some of Aguirres's investigations, the disciplinary decisions were made by Aguirre. Plaintiff has produced no evidence to show that Aguirre had a discriminatory animus against her on the basis of her national origin, and no evidence that Aguirre did not in good faith believe after his investigations that Plaintiff's conduct warranted the warnings and discipline handed out to her. *Cf. Harvey v. Anheuser-Busch, Inc.*, 38 F.3d 968, 972 n.2 (8thCir. 1994) (agreeing that relevant inquiry in pretext analysis is not whether employee actually committed acts of misconduct justifying discipline, but whether employer believed employee had committed those acts).

Because Plaintiff cites no evidence to show that Defendants' justification for terminating her employment was pretext for unlawful discrimination, judgment against her is proper on discrimination claims arising out of termination of her employment.

With respect to Plaintiff's hostile workplace environment claim, her supervisor Valladares twice said to her "pinche salvadoreña"—a vulgar phrase incorporating her national origin. Valladares also did not allow her bathroom breaks, causing her to urinate in her pants; would not

4

allow her to turn on fans in the work area and would yell at her when she asked to turn on a fan; would bang his fist on the wall and make loud noises to scare her; denied her permission to go to a doctor's appointment to see if her cancer was still in remission; and angrily confronted her when she returned to work from that appointment after she received permission from Valladares's superiors to go.

Title VII is not a workplace civility code. *Faragher v. City of Boca Raton*, 524 U.S. 775, 787–88 (1998). Plaintiff must show that the actions constituting harassment are sufficiently serious to affect a term, condition, or privilege of employment, and this standard is "demanding." *Kelleher v. Wal-Mart Stores, Inc.*, 817 F.3d 624, 634 (8th Cir. 2016). Plaintiff must also show a causal nexus between those actions and her national origin. *Id.* Plaintiff's response does not show that the acts of harassment were sufficiently severe and pervasive to satisfy Title VII's standard. More importantly, with the exception of Valladares's vulgarity, Plaintiff cannot show a causal nexus between any harassment and her national origin. Nor can she show that Valladares's vulgarity is sufficiently severe to give rise to a Title VII hostile workplace environment claim. *See Faragher*, 524 U.S. at 788 (explaining that infrequent "mere offensive utterance[s]," "simple teasing," "offhand comments," "isolated incidents," and "the sporadic use of abusive language" are not actionable). Judgment against Plaintiff is proper on her hostile workplace environment claims.

IT IS THEREFORE ORDERED that Plaintiff's motion for an extension of time (Doc. 26) is GRANTED.

IT IS FURTHER ORDERED that Defendants' motion for summary judgment (Doc. 23) is GRANTED and Plaintiff's claims are DISMISSED WITH PREJUDICE. Judgment will be entered accordingly.

IT IS SO ORDERED this 7th day of December, 2018.

/s/ P. K. Holmes, III
P.K. HOLMES, III
CHIEF U.S. DISTRICT JUDGE